## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Sandra Sheets

v.

Frankie E. Shenk

April 8, 1998

Case No. CH98-034

BY JUDGE WILLIAM H. LEDBETTER, JR.

The primary issues in this child support appeal are:

(1) Whether income should be imputed to the father, whose actual income is now considerably less than when his support obligation was established in 1995; and

(2) Whether all or part of a worker's compensation settlement should be treated as income to the father for the purpose of calculating his support obligation.

The case is complicated by an agreement the parties made in April of 1997, at a time when the father was not working, that reduced his child support to $68.00 a week with the proviso that when he returned to work any new support order would be retroactive to the date of his re-employment.

### Facts

The parties were married in 1982. Ashley, 15, and Adam, 9, were born of the marriage. The parties separated in 1994 and were divorced the following year.

At the time of the divorce proceedings, the father was a truck driver for McLane Mid-Atlantic. He earned approximately $50,000.00 a year. The mother was not employed outside the home. At a *pendente lite* hearing on

January 18, 1995, custody was awarded to the mother, and the father was ordered to pay $885.00 a month as child support.

During the divorce litigation, the father sustained a work-related injury. Nevertheless, because the father continued to work, the parties agreed that he would continue to pay $885.00 a month. The court approved the agreement and incorporated it in the divorce decree on November 15, 1995. Future matters pertaining to support were transferred to juvenile court.

A few months later, the father petitioned the juvenile court for a reduction based on the worsening effects of his injury. On July 23, 1996, the juvenile court denied the relief. The court found that despite the injury, the father was still working, earning $56,000.00 a year, and the mother had no income.

At the end of 1996, the parties were in juvenile court again. The mother sought an increase in support; the father again sought a reduction.

Meanwhile, the father's injury proved to be more serious than originally anticipated. He underwent "complex hip revision" surgery in February of 1997.

On April 14, 1997, the juvenile court entered an agreed order reducing the father's support to $68.00 a week with the proviso that any new order that increased his support after his return to work would be retroactive to the date of his re-employment. At the time, the father was receiving $300.00 a week in disability payments. The mother was earning approximately $20,000.00 a year. The parties contemplated that the father would return to work by July 27, 1997; therefore, the case was continued on the docket until July 28, 1997.

On June 4, 1997, the father reached a worker's compensation settlement by the terms of which he received a lump sum payment of $48,000.00 and payment of all injury-related medical bills incurred through that date. According to the settlement, $15,000.00 of the lump sum was for "future medical expenses related to the accident," and the balance, after deducting costs and attorney's fees, was "prorated over the claimant's statutory life expectancy ... resulting in a prorated weekly compensation rate of $12.10 ...."

The father went to work for Thompson Trucking on July 27, 1997. He explained that he had to give up his higher-paying job at McLane because he could no longer perform the strenuous work required of him there. In contrast, his truck driving employment at Thompson involves hauling mail and using "rolling carts" to load and unload the shipments.

On July 28, 1997, the next hearing date, the case was continued. After two more continuances, the case was heard in juvenile court on November 25, 1997. The court set the father's support obligation at $715.09 a month.

Consistent with the parties' earlier agreement, the court made the award retroactive to July 27, 1997, except that the monthly amounts varied because of fluctuations in the mother's child care expenses during the period of retroactivity.

The father appealed.

The case was heard *de novo* in this court on March 2, 1998. Counsel were invited to submit memoranda. Those memoranda have been received.

## Presumptive Amount of Child Support

The first step in any child support case, including a modification proceeding, is to determine the presumptive child support obligation using the guidelines in Virginia Code § 20-108.2. *Orlandi v. Orlandi*, 23 Va. App. 21 (1996). In this case, except for the father's worker's compensation lump-sum settlement, the task is easy because the parties have stipulated all of the figures necessary to make the guidelines calculation.

The father's actual monthly gross income is $2,034.00. The mother's actual monthly gross income is $1,733.00. Using these stipulated sums, the parties' combined actual monthly gross income is $3,767.00. The father's income share is 54%, and the mother's income share is 46%. The guidelines amount for basic child support is $817.00 a month. Adding the stipulated sums for health care coverage ($49.00) and child care costs ($178.00), the parents' total obligation is $1,044.00. The father's share of that obligation is $564.00.

## Worker's Compensation Settlement

For purposes of determining child support obligations, "gross income" is a defined term. It includes "all income from all sources" except those sources, such as public assistance, that are specifically excluded. Gross income includes, among other things, salaries, wages, commissions, royalties, pensions, dividends, interest, annuities, capital gains, *worker's compensation benefits*, unemployment benefits, disability benefits, gifts, prizes, and awards. Virginia Code § 20-108.2(C).

Clearly, "benefits" refers to periodic payments that are designed to off-set loss of income due to disability, illness, temporary unemployment, work-related injury, and the like. Because such payments are a substitute for earnings, they are treated as earnings, i.e., income, for purposes of determining child support obligations.

On the other hand, the statute gives no guidance for the treatment of a parent's receipt of a *lump sum* settlement of such benefits.

In *Whitaker v. Colbert*, 18 Va. App. 202 (1994), the Court of Appeals held that a personal injury settlement was not income because it was not apportioned between income elements (lost earnings) and capital recoupment elements (medical expenses, loss of earning capacity, pain and suffering). By implication, one could assume that if such a settlement *were* specifically apportioned, the income elements of the settlement would be treated as income. Such a result is largely theoretical, of course, because personal injury verdicts in Virginia are general verdicts, not apportioned among the elements of damages, and personal injury settlements are seldom, if ever, apportioned.

In this case, however, the father's worker's compensation lump sum settlement *was* apportioned. The settlement order of June 4, 1997, attributed $23,317.00 to "compensation," which the parties agree constitutes "income." The parties also agree that the portion of the settlement that went to payment of costs and attorney's fees should not be considered. The parties disagree about the appropriate treatment of that portion of the settlement ($15,000.00) allocated to pay for future injury-related medical expenses. The parties also disagree about how to factor the $23,317.00 into a computation of the father's monthly support obligation.

The court agrees with the father that the $15,000.00 attributable in the settlement order to future medical expenses is not income. Following the rationale of *Whitaker v. Colbert*, that item is a capital element, not an income element. It was paid to the father to defray future medical expenses associated with his injury. Although the father presented no evidence related to specific reasonably anticipated costs of such future medical care, his evidence establishes that he "continues to have a significant disability" and that "he will require continued medical care." Father's Ex. # 1.

That leaves the $23,317.00 income component of the settlement. The father argues that the court should prorate the sum over the father's life expectancy, as the settlement order did, thereby treating it as monthly income of $52.00. The mother suggests spreading it over a one-year period, after which time the father's support obligation would be calculated without reference to the worker's compensation settlement. In the alternative, the mother contends that the settlement should be treated as a deviation from the guidelines, as the juvenile court decided.

The court rejects the father's argument that his child support obligation should track the proration recited in the settlement order. Although that order treated the $23,317.00 payment as prorated compensation over the father's

life expectancy, the truth is that he has received the entire amount in one lump sum. To prorate the sum over 37 years, which the order describes as the father's life expectancy, would shortchange the children because they will not be dependent on their father for 37 years. During their minority, they would receive only a fractional benefit from this income, although their father received it, in one lump sum, last year.

On the other hand, the court rejects the mother's suggestion that the sum be treated as income spread over 12 months. Why 12 months? Why not one month or 24 months?

At bottom, the court agrees with the rationale used by the juvenile court. When a parent receives a lump-sum settlement for an injury or disability and the settlement is apportioned so that the income element of it can be ascertained, there is no mathematical formula or computational technique by which the sum can be converted into monthly child support payments. Rather, the court should treat the once-in-a-lifetime receipt as an aberration, creating a basis for deviation from the presumptive guidelines.

### Imputed Income

The mother contends that income should be imputed to the father because of his decision to drive trucks for Thompson rather than McLane. Admittedly, the job change had resulted in a substantial reduction of income to the father.

It is settled that a party seeking a reduction in support payments has the burden of proving a material change in circumstances justifying a modification. He must make a full and clear disclosure relating to his ability to pay. He must show that his lack of ability to pay is not due to his own voluntary act or neglect. *Hammers v. Hammers*, 216 Va. 30 (1975). Even loss of employment is not justification for a reduction if it results from wrongdoing. *Edwards v. Lowry*, 232 Va. 110 (1986). Further, a change of employment that is based on an expectation of increased income potential, but which results in a diminution of income, does not compel a reduction of the support obligation. *Antonelli v. Antonelli*, 242 Va. 152 (1991).

Here, the father has met the burden of proof enunciated in *Hammers* and has distinguished his circumstances from those in *Edwards* and *Antonelli*. The clear and uncontradicted evidence supports the father's contention that he suffers from a disability; that he continues to have pain and discomfort in his hip; that he remains at "high risk" for dislocation of the hip; and that the work he was required to do for McLane was far more physically demanding than the work he does as a truck driver for Thompson. The father's change of employment was necessitated by the debilitating effect of his work-related

injury. Therefore, he is not "voluntarily under-employed" and § 20-108.1(B)(3) does not apply.

Accordingly, no income will be imputed to the father on account of the diminution of income resulting from his change of employment.

### *Visitations*

The father asks the court to consider his extensive visitations with the children in determining his support obligation. Although his time with the children falls short of the 110 full days required for a shared custody computation, he asserts that the court may consider his extensive visitations as a factor in determining child support and as a basis for deviating from the guidelines.

The evidence shows that in each of the last two calendar years, the children have been with the father for portions of more than 110 days. Adam had 139 visits in each year, 98 (in 1996) and 93 (in 1997) of which were 24-hour days; Ashley had the same number of visits in 1996, and 116 visits in 1997, of which 71 were 24-hour days.

The court agrees with the father that these periods of visitation are extensive and may be considered by the court in determining the non-custodial parent's child support obligation. At the same time, it must be noted that such sporadic visitations cannot be the basis for a substantial deviation. Common sense dictates that such visitations do not reduce the custodial parent's fixed costs, such as housing, even though they reduce other less expensive items, such as food. *See* Swisher, Diehl, and Cottrell, *Virginia Family Law*, § 10-10 (2d ed. 1997).

### *Determination*

Considering the factors in § 20-108.1(B) and the presumptive guidelines in § 20-108.2 and for the reasons stated above, the court is of the opinion that the father's child support obligation is $664.00 per month, one-half for each child, beginning on May 1, 1998. Further, in accordance with the parties' agreement, this award is retroactive to July 27, 1997, except that the monthly amounts due from July 27, 1997, through September 1, 1997, will be reduced to account for the lack of child care costs during those months; and the monthly amounts due from September 2, 1997, through December 31, 1997, will be reduced to account for child care costs of only $98.75 per month during that period. Counsel have offered to compute those sums for the order, and the court accepts the offer.